[Civ. No. 46091. Second Dist., Div. Five. Mar. 30, 1976.]

JOSEPH R. BERUAN, Plaintiff and Appellant, v.
PAUL A. FRENCH et al., Defendants and Respondents.

**COUNSEL**

Godfrey Isaac, Barbara Warner Blehr and Lawrence Jay Kraines for Plaintiff and Appellant.

Baltaxe, Rutkin, Kaplan & Klein, David Kaplan, Ansell & Ansell and Herbert M. Ansell for Defendants and Respondents.

## OPINION

ASHBY, J.—This is an action for invasion of privacy. Plaintiff appeals from a summary judgment in favor of defendants.

Plaintiff was president of Automotive Lodge No. 1186 of the International Association of Machinists and Aerospace Workers, and was a candidate for secretary-treasurer in the union's December 1970 election.[1] During the campaign defendants French and Crago distributed a letter in opposition to plaintiff's candidacy. The letter exposed the fact that between 1943 and 1958 plaintiff suffered six criminal convictions for rape, conversion, forgery, impersonating a naval officer, and bigamy, and served various terms in prison.[2] It is admitted that the facts stated in the letter concerning plaintiff's criminal record are true. Plaintiff was defeated in the election for secretary-treasurer.

---

[1] The office of secretary-treasurer was the only full-time paid position with the union, and involved the handling of the members' funds.

[2] The letter stated:

"Dear Sir & Brother:
"Here is the criminal and prison records of Joseph Robert Beruan the man the membership elected President of Lodge 1186 last December, and who is now running for Secretary-Treasurer against Barney Hubert.
"The membership was told that Joseph Robert Beruan had served one sentence, and under the Federal Labor Law was entitled to run for a Union Office.
"I do not believe that the members of Lodge 1186 would have elected Joseph Robert Beruan to any office in the I.A.M. if they had known of this record last year.
"The members must elect honest and trusted men to serve the Lodge next year.
"Don't forget the money in the strike fund, the Relief fund and the general fund is your money. Protect it by choosing your officers very carefully.
"2-26-43 - Honolulu—Arrested and convicted—carnal abuse. Sentenced to territory prison Hawaii.
"3-21-47 - Honolulu—Arrested and convicted—Malicious conversion. Sentenced five years Oahu Prison. Paroled 11-16-48.
"2-6-50 - Honolulu—Arrested and convicted—forging and passing checks, two counts. Sentenced five to ten years. Paroled 10-15-53 from Oahu Prison.
"1-29-54 - Los Angeles, Calif.—Arrested for illegally wearing uniform of Armed Forces.
"2-1-54 - Los Angeles, Calif.—Arrested for impersonating a federal officer U.S.M.
"4-15-54 - Arrested and convicted for impersonating a Naval Officer and false statement for Social Security Card. Sentenced eighteen months Federal Prison Springfield, Missouri.
"4-26-56 - Los Angeles—Arrested for bigamy. L.A. County Probation 9-

Plaintiff brought this action for invasion of privacy, alleging that since the last criminal incident he had led a virtuous life, had become rehabilitated, had lived a quiet life avoiding the curiosity of the public, and had gained the respect of friends, associates and co-workers who were not aware of the criminal incidents. He alleged that defendants wrongfully and maliciously sought to injure plaintiff by thrusting upon him undesired notoriety of private affairs long past, for the purpose of harming plaintiff and defeating him in the election. Upon review of the pleadings, points and authorities, and appropriate declarations and depositions, the trial court granted defendants' motion for summary judgment, finding that "the action has no merit and that Plaintiff has presented no triable issue as to any material fact, and that Defendants are entitled to judgment as a matter of law." (See Code Civ. Proc., § 437c.) In its memorandum of intended decision, the trial court commented in part, "In the court's opinion when the plaintiff sought union office, he entered the public forum and therefore the right of privacy . . . gives way to the voter's right to know." We hold that the trial court was correct and properly granted judgment for defendants.

■ A candidate for public office has no right of privacy as to the flow of truthful information which may be relevant to his qualifications for office. (*Kapellas* v. *Kofman,* 1 Cal.3d 20, 36-37 [81 Cal.Rptr. 360, 459 P.2d 912].) By volunteering his services for office, a candidate waives much of his right to privacy, and almost any truthful comment on his qualifications for office, no matter how serious an invasion of privacy, will be privileged. (*Briscoe* v. *Reader's Digest Association, Inc.,* 4 Cal.3d 529, 535 fn. 5 [93 Cal.Rptr. 866, 483 P.2d 34, 57 A.L.R.3d 1].) A charge of criminal conduct, no matter how remote, is relevant to a candidate's fitness for office. (*Monitor Patriot Co.* v. *Roy,* 401 U.S. 265, 274-277 [28 L.Ed.2d 35, 42-44, 91 S.Ct. 621]; see also *Ocala Star-Banner Co.* v. *Damron,* 401 U.S. 295, 300 [28 L.Ed.2d 57, 62, 91 S.Ct. 628].)

■ Here plaintiff was a candidate not for government office but for the most important elective office in his labor union, a full-time paid position involving the handling of the members' funds.[3] The role of a

---

14-56—Probation to expire 9-13-59.
8-19-58 - Lynwood, Calif.—Arrested and convicted on two counts of rape with three prior felony convictions. Sentenced to five to fifty years. Paroled January 1963. Discharged from parole 6-30-64."

[3]The incumbent secretary-treasurer submitted a declaration that at the time of the election Local Lodge No. 1186 had over $112,000 in its checking account and over $492,000 in its savings accounts.

labor union in the lives of many workers is not unlike a system of government, and strong policies favor the full exercise of the right to free speech in union election campaigns. (See *Linn* v. *Plant Guard Workers,* 383 U.S. 53 [15 L.Ed.2d 582, 86 S.Ct. 657]; *Letter Carriers* v. *Austin,* 418 U.S. 264 [41 L.Ed.2d 745, 94 S.Ct. 2770]; *Jeffers* v. *Screen Extras Guild, Inc.,* 162 Cal.App.2d 717, 729 [328 P.2d 1030]; *Krause* v. *Bertrand,* 159 Cal.App.2d 318, 321 [323 P.2d 784].) Plaintiff's criminal record was relevant to his fitness for this office, and by offering himself as a candidate he must be held to have voluntarily acceded to a searching inquiry into his fitness. (*Kapellas* v. *Kofman, supra,* 1 Cal.3d at pp. 36-37.)

Plaintiff misplaces reliance on *Briscoe* v. *Reader's Digest Association, Inc., supra,* 4 Cal.3d 529, 543, for the proposition that triable issues of fact remained to be determined in the instant case. In *Briscoe* there was "minimal social value" in the publication of Mr. Briscoe's *identity* in a magazine article discussing crime, and Mr. Briscoe "in no way . . . voluntarily consented" to the publication. (*Id.,* at pp. 541-542.) Here, on the other hand, there was a strong social value in the facts published, the union members' legitimate right to know plaintiff's fitness for secretary-treasurer, and plaintiff voluntarily acceded to publicity by seeking the office. ██ As a matter of law, no reasonable trier of fact could find in plaintiff's favor under those circumstances, even if plaintiff could prove that he had become rehabilitated.[4]

The parties have also raised several technical procedural issues, but these arguments lack merit and require no extended discussion.[5]

---

[4]At oral argument plaintiff raised for the first time on appeal the contention that the privilege was abused by excessive publication. This contention is without merit. It is based on a declaration submitted by plaintiff in support of his "motion for reconsideration" presented to the trial court, in which he claimed to have "discovered" at the time of the incident that the letter was in some cases handed out to union members in such manner that other noninterested persons might see it. Defendants pointed out to the trial court numerous defects in plaintiff's motion. Plaintiff's declaration was based on hearsay and provided no supporting facts to show the method of distribution or that any noninterested person actually saw the letter, and thus did not set forth admissible evidence in support of the motion. (Code Civ. Proc., § 437c.) Even if the conclusions alleged in the declaration were believed, the fact that a communication is incidentally read or overheard by a noninterested person will not result in liability if the method adopted is reasonable under the circumstances. (Prosser, Torts (4th ed. 1971) § 115, pp. 793-794.) The motion for reconsideration did not set forth allegations which could not have been presented earlier at time of the motion for summary judgment. Finally, plaintiff filed the notice of appeal before his motion for reconsideration had been acted upon.

[5]Plaintiff has abandoned his contention that certain depositions were never filed with the trial court. Plaintiff's contention that certain matters in the Edwards and Hubert

The judgment is affirmed.

Kaus, P. J., and Stephens, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 2, 1976.

---

declarations were inadmissible makes no difference since those matters were not relevant to the trial court's ruling. Defendants' contention that certain arguments should be stricken from plaintiff's reply brief is without merit because they constituted legitimate rebuttal to defendants' arguments.