ITZIK SHAARI *VS.* HARVARD STUDENT AGENCIES, INC., &
another.[1]

Middlesex. January 8, 1998. - March 20, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, & IRELAND, JJ.

*Libel and Slander. Constitutional Law,* Libel and slander, Freedom of speech
and press.

Discussion of State and Federal cases concerning a plaintiff's burden of proof
in a libel case. [131-132]
This court concluded that the application of G. L. c. 231, § 92, which allows
a plaintiff in a libel action to recover for a defendant's truthful defamatory
statement made with malice, to a media defendant's truthful defamatory
statements concerning a matter of public concern, violates the First Amend-
ment to the United States Constitution and art. 16 of the Massachusetts
Declaration of Rights. [132-134]

CIVIL ACTION commenced in the Superior Court Department on
November 15, 1990.

The case was heard by *Catherine A. White,* J., on a motion
for summary judgment, and a question of law was reported by
*Margot Botsford,* J., to the Appeals Court. The Supreme Judicial
Court granted a request for direct review.

*John C. Lankenau,* of New York (*Jonathan M. Albano & Ro-
sanna Sattler* with him) for the defendants.

*Jonathan M. Albano & Kathryn E. Loebs,* for the Mas-
sachusetts Newspaper Publishers Association, amicus curiae,
submitted a brief.

LYNCH, J. This matter arises from a report to the Appeals
Court of the propriety of an order of a Superior Court judge
denying the defendants' motion for summary judgment. We al-
lowed the defendants' application for direct appellate review.[2]
The plaintiff, alleging that the defendants, the author and the

---

[1]St. Martin's Press, Inc.

[2]We acknowledge the amicus brief submitted on behalf of the defendants by
the Massachusetts Newspaper Publishers Association. We also note that the

publisher of a travel guide, made defamatory statements about him in their guide, commenced a libel action. After conducting extensive discovery, the defendants moved for summary judgment. The judge denied the motion, primarily relying on G. L. c. 231, § 92. The report raises the question whether § 92 unconstitutionally infringes on the defendants' freedom of speech, as guaranteed by the First Amendment to the United States Constitution and art. 16 of the Massachusetts Declaration of Rights, as amended by art. 77 of the Amendments to the Massachusetts Constitution. For the reasons set forth below, we conclude that it does and reverse the judge's decision and order the entry of judgment for the defendants.

*Facts.*

The defendant Harvard Student Agencies, Inc., prepares, and the codefendant St. Martin's Press, Inc., publishes annually a budget travel guide known as "Let's Go: Egypt & Israel." The 1989 edition stated, in reference to the plaintiff's youth hostel: "Women should not stay here, nor should men who don't want to encourage harassment. The manager, Itzik, was being sued on sexual harassment charges by 3 different women during the summer of 1988." Similarly, the defendants' 1990 edition opined, "*Let's Go* strongly recommends that travelers DO NOT stay here. Don't let the beautiful neighborhood and calm exterior fool you. If management changes, this could be a great hostel; check at the tourist office."

These two statements were the basis of the plaintiff's libel action. A judge subsequently dismissed the plaintiff's claim as to the 1989 statement on the ground that a New York court had already deemed it time barred.[3] After the parties conducted extensive discovery, the defendants moved for summary judgment as to the 1990 statement. Their primary claim was that the truthfulness of their statement regarding the sexual harassment allegations against the plaintiff precluded any valid libel claim.[4] Another judge denied the motion, concluding that, although the

Attorney General received notice of the defendants' challenge to the constitutionality of G. L. c. 231, § 92, but declined to intervene.

[3]The judge ruled that, under the full faith and credit clause of the United States Constitution, Massachusetts courts must honor the judgment of a New York court, despite the fact that New York's statute of limitations differs from that of Massachusetts. See *Roche* v. *McDonald*, 275 U.S. 449, 452 (1927). That ruling is not before us on appeal.

[4]The defendants also maintained that their 1990 statement was not actionable because (1) it was merely an expression of opinion, and therefore

statement was substantially true, G. L. c. 231, § 92, dictates that the truthfulness of a defamatory statement is not necessarily a defense to a private plaintiff's libel claim.

*Discussion.*

General Laws c. 231, § 92, provides: "The defendant in an action for writing or for publishing a libel may introduce in evidence the truth of the matter contained in the publication charged as libellous; and the truth shall be a justification *unless actual malice is proved*" (emphasis added). Thus, under the statute, if a plaintiff shows that the defendant acted with malice in making a defamatory statement, the plaintiff may recover — even if the statement is true.

The United States Supreme Court has consistently held in defamation cases that, in order to avoid offending a publisher or broadcaster's First Amendment rights, a plaintiff must establish the existence of a "defamatory falsehood." See *Gertz* v. *Robert Welch, Inc.*, 418 U.S. 323, 341 (1974); *New York Times Co.* v. *Sullivan*, 376 U.S. 254, 279 (1964). Where the plaintiff is deemed a "public figure," the Court has expressly concluded that the First Amendment "absolutely prohibits punishment of truthful criticism." *Garrison* v. *Louisiana*, 379 U.S. 64, 78 (1964), citing *New York Times Co.* v. *Sullivan, supra.* If an individual "has published the truth, and no more [about a public person], there is no sound principle which can make him liable, even if he was actuated by express malice."[5] *Garrison* v. *Louisiana, supra* at 73, quoting *State* v. *Burnham,* 9 N.H. 34, 42-43 (1837). Moreover, "only those false statements made with the high degree of awareness of their probable falsity . . . may be the subject of either civil or criminal sanctions." *Garrison* v. *Louisiana, supra* at 74.

In *Materia* v. *Huff,* 394 Mass. 328, 329 (1985), both the defendant and the plaintiff were candidates for elected office in their labor union. As such, they were "public figures." *Id.* at 331-332. Citing the Court's decisions in *New York Times Co.* v.

protected by the First Amendment; (2) the plaintiff could not show the requisite degree of fault to warrant relief; and (3) the statement was protected under the common interest privilege. The judge rejected each of these claims.

[5]In *Philadelphia Newspapers, Inc.* v. *Hepps,* 475 U.S. 767, 775 (1986), the Court acknowledged that "[o]ur opinions to date have chiefly treated the necessary showings of fault rather than of falsity. Nonetheless, as one might expect given the language of the Court in *New York Times [Co.* v. *Sullivan,* 376 U.S. 254, 279 (1964)] . . . , a public-figure plaintiff must show the falsity of the statements at issue in order to prevail in a suit for defamation."

*Sullivan, supra,* and *Garrison* v. *Louisiana, supra,* we noted that "a judge cannot constitutionally apply G. L. c. 231, § 92, to a public figure or public official." *Materia* v. *Huff, supra* at 333 n.6. At the same time, however, we decided to "leave open consideration of the constitutionality of the statute as applied to private [figures]." *Id.*

Although the Supreme Court has instructed that private figure plaintiffs may recover "on a less demanding showing than that required" in cases of public figure plaintiffs, *Gertz* v. *Robert Welch, Inc., supra* at 348, the falsity of the defendant's defamatory statement regarding matters of public concern remains a prerequisite to recovery. In *Philadelphia Newspapers, Inc.* v. *Hepps,* 475 U.S. 767, 768-769 (1986), the Court held that, where "a newspaper publishes speech of public concern, a private-figure plaintiff cannot recover damages without also showing that the statements at issue are false." There, a private individual filed a libel suit against a newspaper for its articles linking this individual to organized crime and influence peddling. *Id.* at 769. These articles, the Court determined, were "of public concern." *Id.* at 776. Acknowledging the deterrent effect of placing the burden of proving truth on defendants who publish speech of public concern, the Court fashioned "a constitutional requirement that the plaintiff bear the burden of showing falsity, as well as fault, before recovering damages." *Id.* More recently, the Court, in *Milkovich* v. *Lorain Journal Co.,* 497 U.S. 1, 19-20 (1990), concluded that *Philadelphia Newspapers, Inc.* v. *Hepps, supra,* stands for the proposition that "a statement on matters of public concern must be provable as false before there can be liability under state defamation law, at least in situations, like the present, where a media defendant is involved." See *Friedman* v. *Boston Broadcasters, Inc.,* 402 Mass. 376, 381 (1988) ("These were statements about a matter of public concern, and therefore . . . in order for them to be the basis of a recovery from this media defendant, the plaintiffs must prove not only that the statements were defamatory, but also that they were false").

Factually, the circumstances of the present case closely resemble those in *Philadelphia Newspapers, Inc.* v. *Hepps, supra.* The judge here correctly decided that, because the plaintiff had not "voluntarily inject[ed] himself" or become "drawn into a particular public controversy," *Gertz* v. *Robert Welch, Inc., supra*

at 351, he was a private figure. See *Bowman* v. *Heller*, 420 Mass. 517, 524, cert. denied, 516 U.S. 1032 (1995).[6] However, the matter on which the defendants wrote and published in their consumer guide, the existence of multiple sexual harassment claims against the proprietor of a youth hostel open to the general population, is one "of public concern." See *Dulgarian* v. *Stone*, 420 Mass. 843, 844, 847 (1995) (statements concerning "potential conflicts of interest between automobile body repair shops and drive-in appraisal services"); *Friedman* v. *Boston Broadcasters, Inc.*, *supra* (statements that plaintiff insurance company was engaging in deceptive business practices); *Brown* v. *Hearst Corp.*, 54 F.3d 21, 25 (1st Cir. 1995) (televised news report linking plaintiff to unsolved disappearance of his wife); *Phantom Touring, Inc.* v. *Affiliated Prods.*, 953 F.2d 724, 727 (1st Cir.), cert. denied, 504 U.S. 974 (1992) (articles negatively reviewing plaintiff's theatrical production).[7] Finally, there remains the question whether these defendants, the author and the publisher of consumer travel guides, are "media defendants" as the Supreme Court uses the term in reviewing State libel law.[8] *Milkovich* v. *Lorain Journal Co.*, *supra* at 19-20. To be sure, the defendants are not the prototypical members of the "media," such as the Boston Globe or Boston Herald. However, we perceive no difference of constitutional magnitude between a travel review published by the Boston Globe or

---

[6]Where the relevant facts are not disputed, it is for the judge to determine whether a plaintiff is a public or private figure. See *Rosenblatt* v. *Baer*, 383 U.S. 75, 88 (1966); *Stone* v. *Essex County Newspapers, Inc.*, 367 Mass. 849, 862 (1975). "We look 'to the nature and extent of [the plaintiff's] participation in the particular controversy giving rise to the defamation.' " *Materia* v. *Huff*, 394 Mass. 328, 331 (1985), quoting *Gertz* v. *Robert Welch, Inc.*, 418 U.S. 323, 352 (1974). When "an individual voluntarily injects himself or is drawn into a particular public controversy[, he] thereby becomes a public figure for a limited range of issues." *Gertz* v. *Robert Welch, Inc.*, *supra* at 351. See *Bowman* v. *Heller*, 420 Mass. 517, 523, cert. denied, 516 U.S. 1032 (1995).

[7]"Whether . . . speech addresses a matter of public concern must be determined by [the expression's] content, form, and context . . . as revealed by the whole record." *Dun & Bradstreet, Inc.* v. *Greenmoss Bldrs., Inc.*, 472 U.S. 749, 761 (1985), quoting *Connick* v. *Myers*, 461 U.S. 138, 147-148 (1983).

[8]The Supreme Court has reserved judgment on the standards to be applied to nonmedia defendants. See *Milkovich* v. *Lorain Journal Co.*, 497 U.S. 1, 20 n.6 (1990); *Philadelphia Newspapers, Inc.* v. *Hepps*, *supra* at 779 n.4.

Boston Herald, which would require a defamation plaintiff to prove falsity, and the article complained of here, and therefore we conclude, as a matter of State constitutional law, that the defendants are members of the "media." Furthermore, we doubt whether the Supreme Court would apply the media distinction to give greater protection to media giants such as the New York Times or Columbia Broadcasting System than to the modern equivalents of Thomas Paine or John Peter Zenger. Moreover, as the Supreme Court has instructed in another context:

> "Sooner or later, it would be necessary to define those categories of newsmen who qualified for the privilege, a questionable procedure in light of the traditional doctrine that liberty of the press is the right of the lonely pamphleteer who uses carbon paper or a mimeograph just as much as the large metropolitan publisher who utilizes the latest photocomposition methods. . . . Freedom of the press is a 'fundamental personal right' which 'is not confined to newspapers and periodicals. It necessarily embraces pamphlets and leaflets. . . . *The press in its historic connotation comprehends every sort of publication which affords a vehicle of information and opinion.'* Lovell v. Griffin,* 303 U.S. 444, 450, 452 (1938). See also *Mills* v. *Alabama,* 384 U.S. 214, 219 (1966); *Murdock* v. *Pennsylvania,* 319 U.S. 105, 111 (1943). The informative function asserted by representatives of the organized press in the present cases is also performed by lecturers, political pollsters, novelists, academic researchers, and dramatists." (Emphasis added.)

*Branzburg* v. *Hayes,* 408 U.S. 665, 704-705 (1972). We feel compelled, therefore, by the Supreme Court's view of the First Amendment to require that this plaintiff's recovery be predicated, in part, on proof that the defamatory statements were untrue.

General Laws c. 231, § 92, offers a plaintiff the opportunity to recover for a defendant's truthful defamatory statement made with malice. To apply this statute to the defendants' truthful defamatory statement concerning a matter of public concern, even if the statement is malicious, violates the First Amendment.

We reverse the order denying summary judgment and order the entry of summary judgment for the defendants.

*So ordered.*