24-1707
United States v. Smurphat

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 7th day of October, two thousand twenty-five.

PRESENT:
> REENA RAGGI,
> RICHARD C. WESLEY,
> MYRNA PÉREZ,
> *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

          *Appellee,*

    v.                 No. 24-1707

KEVIN SMURPHAT,

          *Defendant-Appellant.*

_____

**FOR APPELLEE:**                                    NICOLAS COMMANDEUR, Assistant United States Attorney, *for* John A. Sarcone III, United States Attorney for the Northern District of New York, Syracuse, NY.

**FOR DEFENDANT-APPELLANT:**                JANEANNE MURRAY, Murray Law LLC, New York, NY.

Appeal from a June 20, 2024, judgment of the United States District Court for the Northern District of New York (Hon. Anne M. Nardacci, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the District Court is **AFFIRMED**.

Defendant-Appellant Kevin Smurphat pled guilty to various child pornography offenses after the District Court denied his motion to suppress a search of his cellphone, which led to the discovery of commission of the charged crimes.[1] Smurphat's conditional plea agreement contained an appellate waiver that reserved his right to appeal the following issue raised in his motion to suppress: "whether the search of the defendant's phone pursuant to his conditions of parole violated the Fourth Amendment, and, if so, whether the information obtained from the phone, subsequent searches, and the defendant's statements were tainted by the unlawful search." App'x at 106. Smurphat appeals pursuant to that conditional plea agreement. We assume the parties' familiarity with the facts, procedural history, and issues on appeal, to which we refer only as

---

[1] Smurphat's motion to suppress was denied by Judge Gary L. Sharpe on January 11, 2023, and Smurphat entered a guilty plea on November 28, 2023. The case was reassigned on February 7, 2024, to Judge Nardacci, who sentenced Smurphat on June 14, 2024.

necessary to explain our decision to affirm the District Court's denial of Smurphat's motion to suppress.

## I. Background

Smurphat's criminal history includes a conviction under New York law for first degree attempted sexual abuse involving sexual contact with an individual under 11 years old and subsequent probation and parole violations, which resulted in additional periods of incarceration. One such violation resulted from his possession of an unauthorized phone, as well as children's underwear. Released from prison in July 2020, Smurphat was on parole living in a motel room at the time of the challenged search. Before his release, he agreed to a variety of parole conditions which included submitting his "person, residence and property" to "search and inspection" and cooperating with "unannounced examinations directed by the PAROLE OFFICER of any and all computer(s) and/or other electronic device(s) to which I have access." App'x at 38–40.

Around 7:20 a.m. on November 8, 2020, three parole officers entered the motel room in which Smurphat had been staying. Smurphat claims that "he awoke to find them standing over him in the bed, still dressed in underclothes." *Id.* at 19. After the parole officers entered Smurphat's room, they observed a cellphone on the bed next to Smurphat. *Id.* Smurphat initially denied that the cellphone was his, but eventually provided a passcode, which the parole officers used to unlock the cellphone and search it. *Id.* Therein, they found child pornography in conversations on the messaging app

Kik, DropBox, and Gmail apps. *Id.* Smurphat was arrested and charged with transportation, distribution, receipt, and possession of child pornography, in violation of 18 U.S.C. § 2252A(a). *Id.* at 11–15, 19–21; Appellant's Br. 7–9 (relying on the same).

**II.    Legal Standard**

"On appeal from a district court's ruling on a motion to suppress evidence, 'we review legal conclusions de novo and findings of fact for clear error.'" *United States v. Ganias*, 824 F.3d 199, 208 (2d Cir. 2016) (quoting *United States v. Bershchansky*, 788 F.3d 102, 108 (2d Cir. 2015)). "We may uphold the validity of a judgment 'on any ground that finds support in the record.'" *Id.* (quoting *Headley v. Tilghman*, 53 F.3d 472, 476 (2d Cir. 1995)).

**III.    Discussion**

On appeal, Smurphat alleges Fourth Amendment violations from both the parole officers' entry into his motel room, as well as their search of his cellphone. Appellant's Br. 23. We address each challenge in turn.

**A.  Smurphat's Challenge to the Parole Officers' Entry**

As an initial matter, the parties dispute the scope of this appeal: Smurphat challenges the parole officers' entry into his motel room as part of the search of his phone, while the Government asserts that the entry is a separate search precluded by the plea agreement's appellate waiver, which preserved only a challenge to the phone search. We need not decide the scope of the appellate waiver, however, because Smurphat did not

4

challenge the parole officers' entry in the District Court, and thus has forfeited this issue altogether.

"[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 132 (2d Cir. 2008) (quoting *Bogle-Assegai v. Connecticut*, 470 F.3d 498, 504 (2d Cir. 2006)); *Greer v. United States*, 593 U.S. 503, 507 (2021) (deeming argument forfeited where defendant failed to preserve claim of error). In the district court, Smurphat moved to suppress "evidence and statements that are the direct result of the warrantless, suspicionless search of his cell phone," without suggesting that the parole officers' entry was in any way itself unconstitutional. App'x at 16. On this record, we conclude that Smurphat has failed to sufficiently raise the issue of the parole officers' entry below, so we do not consider it here.[2]

### B. The Cellphone Search Did Not Violate the Fourth Amendment

Alleged Fourth Amendment violations in the context of parole implicate the special needs doctrine:

> Although warrantless searches are generally presumed unreasonable, the
> law recognizes certain exceptions to this rule. Notably, in *Griffin v.*

---

[2] While we may exercise our discretion to correct a forfeited error, *see United States v. Parse*, 789 F.3d 83, 113, 119 (2d Cir. 2015), we decline to do so here. The fact-laden inquiry into the parole officers' entry is undeveloped on the record before us. Insofar as Smurphat's counsel submits that the entry was warrantless, unannounced, and forcible, *see* Appellant's Reply Br. 6–9, a court is not required to credit such assertions in the absence of a sworn affidavit from Smurphat. *See United States v. Maldonado-Rivera*, 922 F.2d 934, 972–73 (2d Cir. 1990) (concluding court properly declined to credit unsworn statements on suppression motion).

5

*Wisconsin*, the Supreme Court ruled that "[a] State's operation of a probation system . . . presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements." 483 U.S. 868, 873–74 (1987). Relying on the "special needs" exception articulated in *Griffin*, this court has ruled that the operation of a *parole* system also presents special needs justifying a departure from the traditional Fourth Amendment warrant requirement.

*United States v. Newton*, 369 F.3d 659, 665 (2d Cir. 2004). This is what permits Smurphat's parole conditions in the first place—for example, that he "will cooperate with unannounced examinations . . . of any and all computer(s) and/or other electronic device(s) . . . ." App'x at 40.

Those conditions notwithstanding, parole officers do not have boundless authority to conduct warrantless searches. Rather, "a search of a parolee is permissible so long as it is reasonably related to the parole officer's duties." *United States v. Oliveras*, 96 F.4th 298, 307 (2d Cir. 2024) (quoting *United States v. Braggs*, 5 F.4th 183, 186–87 (2d Cir. 2021)). And "[b]ecause a search undertaken by a parole officer of a parolee to detect parole violations is 'reasonably related to the parole officer's duties,' such a search is 'permissible' under the Special Needs framework and accordingly 'comport[s] with the Fourth Amendment.'" *Braggs*, 5 F.4th at 188 (quoting *United States v. Grimes*, 225 F.3d 254, 259 n.4 (2d Cir. 2000)).

Therefore, the relevant question here is whether the parole officers' search of Smurphat's cellphone was to detect parole violations. On this record, it is clear that it was. Given Smurphat's history of sex offenses and parole violations, he was subject to

parole conditions that limit his use of electronic devices and require him to subject such approved devices to unannounced search. In line with that understanding, Smurphat was subject to Special Conditions 17 and 25 to which he agreed that he "will NOT be in the possession of . . . anything with the capability of accessing the internet, and Wi-Fi capabilities, without the prior knowledge and permission of my Parole Officer" and "shall NOT purchase, possess or engage in the use of any sexually explicit materials." App'x at 44. It is uncontroverted that Smurphat was not authorized to possess the cellphone in question, i.e., he possessed it in violation of his parole conditions. The parole officers—who observed this cellphone lying on the bed in plain view—therefore had reason to believe Smurphat was violating his parole conditions, including by engaging in prohibited activity on the cellphone. Accordingly, the parole officers were entitled to seize and search this unauthorized cellphone to determine whether Smurphat was violating his parole conditions.

To be clear, the foregoing analysis does not draw a distinction between the seizure and the search of Smurphat's cellphone. Smurphat argues on appeal that even if the parole officers could *seize* the cellphone under the special needs doctrine, the *search* of that cellphone is nevertheless unpermitted. Appellant's Reply Br. 10. It is true that outside of the special needs doctrine, there is a distinction between the seizing of a cellphone and the search of a cellphone. *Riley v. California*, 573 U.S. 373, 403 (2014) ("Our answer to the question of what police must do before searching a cell phone seized

7

incident to an arrest is . . . simple—get a warrant.").  But within the special needs doctrine context—particularly where Smurphat's parole conditions explicitly contemplate such searches—that distinction is inapposite.  *Riley* nevertheless "recognized that 'other case-specific exceptions may still justify a warrantless search of a particular phone,'" and "our Court has held that the special needs doctrine permits suspicionless search conditions 'when sufficiently supported by the record.'"  *United States v. Robinson*, 134 F.4th 104, 113–14 (2d Cir. 2025) (citations omitted).  So too here.

**IV.    Conclusion**

We have considered Smurphat's remaining arguments and find them to be without merit.  For the foregoing reasons, we **AFFIRM** the order of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court